UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Keith Crow,                                           12-CV-2216 (PJS/FLN)

       Plaintiff,

  v.                                              **REPORT AND**
                                     **RECOMMENDATION**

Kris Severs, Glen Lisowav, Bill Braun,
Lieutenant McQuillan, David Reishus,
Kent Grandlienard, Terry Carlson,
Tom Roy and Sheila Monio.

       Defendants.

_____

Keith Crow, pro se.
Jackson Evans, Assistant Attorney General, for State Defendants.
_____

    **THIS MATTER** is before the undersigned United States Magistrate Judge on

Defendants' motion for summary judgment (ECF No. 166). This matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, this Court recommends that Defendants' motion be **GRANTED**.

## I.    BACKGROUND

    Keith Crow is a prisoner of the State of Minnesota who is currently incarcerated at the

Corcoran State Prison in California. Notice of Change of Address, ECF No. 174. In 2005, Crow

was found guilty of aiding and abetting first-degree murder and was sentenced to life in prison

without the possibility of parole. Malecha Aff., ECF No. 47. After two years in custody with the

Minnesota Department of Corrections (DOC) (November 2005 – September 2007), Crow was

transferred to the Connecticut Department of Corrections. Wherley Aff. 2, ECF No. 168. Crow

was returned to the Minnesota DOC in December 2010. *Id.* In May 2012, the DOC transferred

Crow to High Desert Prison in California. ECF No. 47-1. By January 2014, Crow was moved to

the Corcoran State Prison because, after various placements within High Desert, the prison staff

determined that Crow should be transferred to another facility. Defs.' Mem. in Opp. to TRO,

ECF No. 77.

Crow's various out-of-state transfers were made pursuant to the Interstate Corrections

Compact. *See* Minn. Stat. §§ 241.28–30 (2012). According to Minnesota DOC officials, Crow

was transferred to prisons outside of Minnesota due to "security concerns." ECF No. 47. Each

transfer process is lengthy. Malecha Aff. ¶ 6, ECF No. 47. Months, if not years, may pass before

an out-of-state prison willing to accept transfer inmates is identified. For example, after Crow

returned to Minnesota in 2010, his transfer process started in February 2011, but he was not

transferred to California until May 2012. Wherley Aff., Ex. 2, ECF No. 168-1.

### A.     The Administrative Control Unit (ACU) at Oak Park Heights.

Crow was housed in the ACU during his stay at the Oak Park Heights facility in

Minnesota. *Id.* at 2. The ACU is the DOC's most secure living unit, utilized for violent prisoners

or other inmates who cannot be safely housed in general population units. *Id.* In the ACU, each

offender lives in his own cell. *Id.* The unit is designed to prevent inmates from coming into

contact with each other. *Id.* Inmates housed in the ACU are allowed to exercise alone in

recreation rooms designed for single occupation. *Id.*

Remote access is used to facilitate most offender movement in the ACU. *Id.* This means

that correctional officers open and close doors remotely, thereby increasing safety by reducing

the physical contact between inmates and correctional officers. *Id.* Remote access also saves time

because all offenders in the ACU must be handcuffed before being moved out of their cells. *Id.*

Remote access is controlled from what is referred to as the "security bubble" located in the ACU. Severs Aff., ECF No. 169. An intercom is used to tell offenders where to go and a control panel allows the correctional staff to open and close doors remotely. *Id.* The buttons controlling each door are located close to each other on the control panel. *Id.* There are also video screens inside the security bubble so that the officers can view what is happening in each room. *Id.*

      **B.**      **February 2012 fight incident at Oak Park Heights.**

On February 2, 2012, Crow was involved in an altercation with inmate Alan Duncan after Defendant Severs inadvertently allowed both prisoners into the same recreational room. *Id.* Defendant Severs and Sergeant Glenn Lisowy were working the ACU bubble at the time of the incident. *Id.* Severs granted Crow access to recreation room #8 and intended to grant Duncan access to recreation room #6. *Id.* According to Severs, he accidently pressed the wrong button on the control panel, permitting Duncan to enter room #8. *Id.* The button for room #8 is directly below the button for room #6. *Id.* Duncan had to walk by room #8 to get to room #6 and when he was inadvertently granted access, he entered room #8 and closed the door. *Id.* Severs immediately realized his mistake and observed Duncan approaching Crow and immediately start throwing punches. *Id.* at 8. A fight between Duncan and Crow ensued, starting at 8:16:48 a.m. Because a certain number of officers must be present before intervening in an inmate fight, Sgt. Lisowy activated the Incident Command System (ICS) to summon additional officers to recreation room #8.[1] An appropriate number of officers arrived and the inmates were separated within 30 seconds, by 8:17:17 a.m.

---

[1]     ICS is a component of the National Incident Management System (NIMS) and is used to manage incidents that occur outside of normal DOC operations. ECF No. 169 at 3.

The officers were surprised that Duncan attacked Crow, as the two inmates did not have a history of altercations and were housed next to each other in the ACU since March 4, 2011. Lieutenant Joe McQuillan initiated an investigation of the incident on February 7, 2012. ECF No. 168, ¶ 10. On February 15, 2012, Severs received a verbal warning for allowing two offenders into the same recreation room. *Id.*

### C.     Disciplinary action against Crow.

Crow was charged with disorderly conduct with a maximum sentence of 45 days in segregation status because of his participation in the fight with Duncan. *Id.*, Ex. 8. The DOC has a uniform set of procedures that are followed before an offender receives punishment. *See* DOC Policy 303.010, ECF No. 168-3 at 7. Inmates are provided notice of the allegations against them, the regulation that was allegedly violated and the date of a tentative hearing. *Id.* Offenders may waive their right to a hearing and plead guilty in exchange for a reduced penalty. *Id.* Crow utilized this option and received a sentence of ten days on disciplinary segregation status. *Id.*

### D.     Medical Care Received by Crow.

Shortly after the fight incident Crow was examined by DOC nurse Brenda Wark. ECF No. 168, Ex 8. Dr. Stephen Craane assessed Plaintiff the next day, on February 3, 2012. *Id.*, Ex. 9. Crow complained of blurred vision in his left eye, neck pain, back pain and pain in his upper incisor. *Id.* Dr. Craane diagnosed Crow with facial contusions, a potentially dislodged left upper incisor and muscle spasms. *Id.* Crow was treated for these issues and referred to the facility dentist and optician. *Id.* Crow was also encouraged to inform the medical clinic should any additional issues arise as a consequence of the fight. *Id.*

### E.     Claims alleged by Crow.

On December 26, 2012 Crow filed this lawsuit alleging that State Defendants Roy,

Severs, Lisowy, Braun, McQuillan, Rishus, Grandlienard, Carlson and Monio violated his constitutional rights. ECF No. 18. Crow sued on five counts: (1) cruel and unusual punishment; (2) expost facto clause violations (including retaliation); (3) due process violations; (4) equal protection violations and (5) medical negligence. *Id.*

## II.      STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences drawn from it should be made in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.      ANALYSIS

### A.      Crow's Eighth Amendment claim.

Defendants' argue that Crow's Eighth Amendment claim should be dismissed because no evidence in the record supports the conclusion that Crow faced an objective risk of harm or that the Defendants were deliberately indifferent to Crow's safety needs. Defs.' Mem. in Supp. of Summ. J 10, ECF No. 167. Crow contends that based on his history as an offender who could not be safely housed in general population, Defendant Severs' actions constitute deliberate

indifference to Crow's safety. Pl.'s Mem. in Opp. to Defs.' Mot. for Summ J. 5, ECF No. 177. The Court agrees with Defendants.

The Eighth Amendment prohibition against cruel and unusual punishment "requires prison official to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials act unreasonably when they are "deliberately indifferent" to a substantial risk of serious harm. *Farmer*, 511 U.S. at 828. To prove deliberate indifference, inmates must make a two-part showing: first, from an objective perspective, the inmate must show that the deprivation of rights was sufficiently serious; second, the inmate must show that the prison official subjectively knew that there was a risk of serious harm and did not reasonably respond. *Nelson*, 603 F.3d at 447.

In this case, Crow's Eighth Amendment claim fails because Crow has not produced evidence sufficient to create a genuine issue of material fact in regard to whether Servers intentionally allowed Duncan into Crow's recreation room or failed to adequately respond. All evidence in the record points to Severs mistakenly permitting Duncan access into the same recreation room as Crow. ECF No. 168-3, 1-16. The fact that the remote access buttons for the recreation room doors are near each other on the control panel supports Severs' claim that he made an unintentional mistake. *Id.* Additionally, the record demonstrates that Severs and Sergeant Lisowy took immediate action to summon their colleagues to assist in breaking up the fight between Duncan and Crow. *Id.* In the end, the altercation lasted for less than 30 seconds. *Id.* For all of these reasons, no genuine issue of material fact is present in regard to the subjective component of Crow's Eighth Amendment claim arising from the fight incident with Duncan. Because Crow has failed to establish the necessary subjective component, the Court need not

address the objective component of an Eighth Amendment claim. For all of these reasons, Defendants' motion for summary judgment on Crow's Eighth Amendment claim should be granted.[2]

**B.    Crow's Ex Post Facto claim.**

Defendants argue that Crow's Ex Post Facto claim fails as a matter of law because no Court has held that a change in confinement or an altercation between offenders can give rise to a claim under the Ex Post Facto clause of the Constitution. ECF No. 167 at 14. Crow argues that the physical injuries he suffered and his transfer to the High Desert Prison in California violated his rights under the Ex Post Facto Clause. ECF No. 177 at 18. The Court agrees with Defendants.

"One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). To fall within ex post facto prohibition, a law must apply to events occurring before its enactment and must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime. *Zacher v. Tippy*, 202 F.3d 1039, 1045 (8th Cir. 2000).

In this case, Crow's argument that his physical injuries and transfer to High Desert Prison constitute a violation of his rights under the Ex Post Facto Clause fails as a matter of law because neither alleged injury is reflective of a retroactive law or policy that has enhanced Crow's original sentence. *Collins v. Youngblood* , 497 U.S. 37, 41 (1990) ("[I]t has long been recognized by this Court that the constitutional prohibition on *ex post* facto laws applies only to penal

---

[2]    The Court construes Crow's Eighth Amendment claim as pled against Defendants Severs and Lisoway. *See* ECF No. 177, 6-7. Because Crow's claim against Severs fails, his alleged respondeat superior claim against Lisoway for improper supervision of Severs also fails. *See also Hahn v. McLey*, 737 F.2d 771, 773 (8th Cir. 1984) ("[t]he theory of respondeat superior cannot be used under § 1983 to shift the responsibility for the plaintiff's injuries to the supervisors of the actual wrongdoers.").

statutes which disadvantage the offender affected by them."). To the extent Crow seeks to allege that his punitive segregation term of 10 days for engaging in the fight with Duncan violated his constitutional rights, the claim also fails as a matter of law because whether the use of segregation is proper for administrative and/or punitive purposes in prison is not analyzed under the ex post facto clause. *See, e.g. Damiano v. Florida Parole & Probation Com.*, 785 F.2d 929, 933 (11th Cir. 1986) (holding that ex post facto claims are "proper only when subsequent legislation imposes more onerous or disadvantageous punishment."); *Owens v. Hubbard*, 2005 U.S. Dist. LEXIS 34682, *8 (E.D. Cal, July 12, 2005) ("The Ex Post Facto Clause applies to criminal penalties, not administrative regulations."). For all of these reasons, Crow's Ex Post Facto claim fails and Defendants' motion for summary judgment should be granted.

### C.      Crow's Due Process claim.

Defendants argue that Crow's Due Process claim fails because he cannot prove that he suffered any atypical hardship as a consequence of the February 2012 altercation. ECF No. 167 at 14. Crow argues that he was forced to fight in a locked cage and that the disciplinary action he faced for trying to protect himself violated his Due Process rights under the Fourteenth Amendment. ECF No. 177 at 18. The Court agrees with Defendants.

To establish a Fourteenth Amendment Due Process violation for placement in segregation, an inmate "must identify conditions that impose 'atypical or significant hardship' in relation to the ordinary incidents of prison life." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Eighth Circuit has held that placement in segregation, even without cause, is not itself an atypical or significant hardship. *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002); *see also Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (finding that a prisoner had no constitutionally protected liberty interest in

remaining in less restrictive prison environment); *Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2

643 (8th Cir. 1996) (stating that punitive isolation is not an atypical and significant deprivation).

Here, Crow has not produced any evidence that supports the conclusion that he suffered

an atypical hardship as a consequence of his engagement in the February 2012 altercation with

Defendant Duncan. If, as held in *Portley-El v. Brill*, being assigned to segregation without cause

does not constitute an atypical hardship, then being assigned to 10 days in segregation after

engaging in a fight with a fellow inmate surely cannot be construed as an atypical hardship. *See*

*Portley-El*, 288 F.3d at 1065. Crow also contends that he was not provided an opportunity to be

heard at a disciplinary hearing in violation of his due process rights. ECF No. 177 at 10.

However, Crow also acknowledges that he entered a plea agreement for a reduced penalty of 10

days versus the maximum penalty of 45 days. *Id.* at 9. According to DOC policy, Crow had the

choice to either have a full hearing or enter a plea to avoid the possible maximum sentence. ECF

No. 168-3 at 7. Crow has produced no evidence that suggests he was not informed of these two

options. For all of these reasons, Defendants motion for summary judgment on Crow's Due

Process claims should be granted.[3]

---

[3]     Crow's amended complaint includes an Equal Protection claim that was not addressed in Defendants' memorandum in support of their motion for summary judgment. *See* ECF No. 18 at 15. The facts pled by Crow in support of his Equal Protection claim are a mix of allegations pled in his cruel and unusual punishment and due process claims. *Id.* In sum, Crow alleges that he was forced to fight Duncan and that similarly situated inmates are not forced to fight. *Id.* In order to state an Equal Protection Claim, a prisoner must show that (1) "he is treated differently than a similarly situated class of inmates," (2) "the different treatment burdens one of his fundamental rights," and (3) "the different treatment bears no rational relation to any legitimate penal interest." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004).  Here, Crow fails to plead facts sufficient to establish each of the necessary elements to state an Equal Protection claim. Moreover, as discussed in Section A, all evidence in the record points to Severs mistakenly permitting Duncan access into the same recreation room as Crow. ECF No. 168-3, 1-16. There is no evidence that Crow was "forced to fight." For these reasons, Crow's Equal Protection Claim fails as matter of law and should be dismissed.

**D.      Crow's Medical Malpractice claim.**

Defendants argue that Crow's medical malpractice claims should be dismissed against

the state Defendants because none of them are medical professionals. ECF No. 167 at 19. Crow

alleges that the state defendants are responsible for prison medical policy and therefore should be

liable for medical malpractice. ECF No. 177 at 15. Crow also requests that the Court to excuse

him from complying with the affidavit requirement under Minn. Stat. § 145.682, subd. 2 (2012)

in light of his *pro se* status. *Id.* [4] The Court agrees with Defendants.

Three elements must be met to state a viable medical malpractice claim:

(1) the standard of care recognized by the medical community as applicable to the
particular defendant's conduct, (2) that the defendant in fact departed from that
standard, and (3) that the defendant's departure from the standard was a direct
cause of [the patient's] injuries.

*MacRae v. Group Health Plan, Inc.*, 753 N.W.2d 711, 717 (Minn. 2008). Here, the state DOC

Defendants are not part of a medical community and thus there is no standard of care that the

Court can apply to them. Thus, Crow's medical malpractice claim fails against the state

Defendants.[5]

**E.      Crow's Retaliation claim.**

Finally, Defendants argue that Crow's retaliation claim should be dismissed because the

record supports the conclusion that the process of transferring Crow to the High Desert Prison in

California began at least six months prior to the February 2012 fight incident. ECF No. 167 at

---

[4]      Plaintiffs who allege medical malpractice under Minnesota law must submit expert
affidavits to establish a prima facie case of malpractice. Minn. Stat. § 145.682. The penalty for
not serving an expert affidavit within 60 days after it has been demanded by motion is mandatory
dismissal with prejudice. Minn. Stat. 145.682, subd.6.

[5]      The Court previously granted Dr. Craane's motion to dismiss that, among other things,
addressed Crow's medical malpractice claim against Dr. Craane. *See* ECF Nos. 141 and 180.

20. Crow argues that he was threatened with transfer in response to writing grievances about the February 2012 incident. ECF No. 177 at 16. The Court agrees with Defendants.

Establishing a retaliation claim requires a plaintiff to show that  (1) he or she exercised a constitutionally protected right; (2) prison officials took adverse action against him or her; and (3) the inmates exercise of his or her constitutional right motivated the prison official's adverse action. *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009). Here, the record makes clear that the DOC was trying to transfer Crow well before the February 2012 incident. ECF No. 47, Ex. B. Specifically, the DOC's letter to California's Interstate Corrections Compact Coordinator is dated August 19, 2011, six months prior to the fight incident. *Id.* Thus, Crow's transfer cannot be construed as an adverse action in response to his exercise of any constitutional right.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment should be granted on all of Crow's alleged claims.

## V. RECOMMENDATION

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motions for Summary Judgment (ECF No. 166) be **GRANTED**.

DATED: July 31, 2014                              *s/Franklin L. Noel*
                                                  FRANKLIN L. NOEL
                                                  United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 14, 2014**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.